# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **JUSTIN WAYNE HEATH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:19-cv-0803** |
| | ) | **Judge Aleta A. Trauger** |
| **C.R. BARD INCORPORATED and** | ) | |
| **BARD PERIPHERAL VASCULAR** | ) | |
| **INCORPORATED,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM & ORDER

At the request of the court, the parties in this case have filed trial briefs addressing the issue of what standard the jury should apply when considering whether the inferior vena cava ("IVC") filter at issue in this case was "unreasonably dangerous" for the purposes of the Tennessee Products Liability Act ("TPLA"). (Doc. Nos. 175–76.) Specifically, the parties disagree about what role, if any, consumer expectations should play in the applicable standard. For the reasons set out herein, the court will instruct the jury only as to the "prudent manufacturer" standard and will not instruct the jury as to an alternative standard based on consumer expectations.

Under the TPLA, "[a] manufacturer or seller of a product shall not be liable for any injury to a person or property caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller." Tenn. Code Ann. § 29-28-105(a). As defined by the Act,

> "[u]nreasonably dangerous" means that [1] a product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics, *or* [2] that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller, assuming that the manufacturer or seller knew of its dangerous condition.

Tenn. Code Ann. § 29-28-102(8) (emphasis added). In other words, the TPLA recognizes two alternative routes for satisfying the "unreasonably dangerous" requirement, a "consumer expectations" test and a "prudent manufacturer" test. Those two tests are "neither mutually exclusive nor mutually inclusive," meaning that, in any given case, it may be appropriate—or even required—to give instructions regarding both tests. *Ray ex rel. Holman v. BIC Corp.*, 925 S.W.2d 527, 531 (Tenn. 1996).

Although the TPLA "does not limit the application of either test to only certain types of actions," the Tennessee Supreme Court has held that "the consumer expectation test will be inapplicable, by definition, to certain products about which an ordinary consumer can have no expectation." *Id.* at 533. Based on that principle, "several decisions have recognized that 'the prudent manufacturer test will often be the only appropriate means for establishing the unreasonable dangerousness of a complex product about which an ordinary consumer has no reasonable expectation.'" *Brown v. Raymond Corp.*, 432 F.3d 640, 644 (6th Cir. 2005) (quoting *Ray*, 925 F.2d at 531) (collecting cases). The defendants point out various complexities regarding the functioning of IVC filters and argue that they are too complex a product to be evaluated under the consumer expectations test.

Patients are certainly capable of forming meaningful expectations about their treatment, and, indeed, the concept of informed consent is central to the entire framework for regulating medical care and practice in the United States—including in this very case. It seems to fly in the face of the assumptions underlying informed consent to suggest that patients are not, in fact, capable of forming reasonable expectations about medical treatment and, by extension, the medical products involved in their treatment. Nevertheless, the defendants are correct that some courts have considered the issue and held or suggested that consumer expectations are irrelevant to the standard

for unreasonable dangerousness regarding medical device TPLA claims. *See, e.g.*, *Young v. Olympus Am., Inc.*, 2012 WL 252645, at *5 (W.D. Tenn. Jan. 26, 2012) (holding that "the prudent manufacturer test, and not the consumer expectation test, governs" TPLA claims related to a bronchoscope); *Ross v. Sofamor, S.N.C.*, 1999 WL 613357, at *8 n.14 (W.D. Tenn. Mar. 10, 1999) (stating that "the consumer expectation test may not apply to the instant case because an ordinary purchaser would not have the medical knowledge or a basis of expectations about the safety of the" pedicle fixation system at issue).

And the Sixth Circuit went even further in *Strayhorn v. Wyeth Pharms., Inc.*, 737 F.3d 378 (6th Cir. 2013), when it held:

> Although Tennessee caselaw has not yet addressed whether the prudent-manufacturer test or the consumer-expectation test applies to design-defect claims involving prescription drugs, the former test would appear to be the appropriate choice in this case because the ordinary consumer would not have the medical knowledge necessary to have a reasonable expectation about the safety of [the heartburn drug at issue,] metoclopramide.

*Id.* at 397 (citing *Ray*, 925 S.W.2d at 531). Metoclopramide is a drug used to treat common (if nevertheless potentially serious) digestive ailments. It would be a far stretch for this court to distinguish *Strayhorn* by holding that that drug was unusually complex in a way that an IVC filter is not. *See id.* at 384–85 (discussing metoclopramide). If anything, the argument that an ordinary consumer would be unable to form meaningful expectations is more persuasive with regard to a surgically implanted medical device like an IVC filter than with regard to a heartburn drug.

The Sixth Circuit is not the final arbiter of Tennessee law; that, of course, is the Tennessee Supreme Court, and the Sixth Circuit, like this court, can only "make an *Erie* guess[1] to determine how [the Tennessee Supreme Court], if presented with the issue, would resolve it." *In re Fair Fin. Co.*, 834 F.3d 651, 671 (6th Cir. 2016) (quoting *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714

---

[1] "*Erie* guess" refers to *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

F.3d 355, 358–59 (6th Cir. 2013)). The Sixth Circuit, however, still has the power to bind this court with its precedents on questions of law, including *Erie* guesses. *See Rutherford v. Columbia Gas*, 575 F.3d 616, 619 (6th Cir. 2009). Admittedly, some courts have taken the position that a circuit court's interpretation of a state law is not a legal precedent in the ordinary sense and, therefore, is not binding on future district courts. *See, e.g.*, *Anderson Living Trust v. WPX Energy Prod., LLC*, 306 F.R.D. 312, 430 n.77 (D.N.M.) ("When interpreting state law, the Tenth Circuit does not and cannot issue a case holding that x is the law in New Mexico; it holds that the proper interpretation of New Mexico law, at the time the opinion is released, is x. Its holdings are descriptive, not prescriptive—interpretive, not normative."). The Sixth Circuit, however, has made clear that, at least as a general proposition, "when a panel of [the circuit court] has rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit, . . . unless an intervening decision of the state's highest court has resolved the issue." *Rutherford*, 575 F.3d at 619 (quoting *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003)); *but see Hampton v. United States*, 191 F.3d 695, 702–03 (6th Cir. 1999) (departing from interpretation of Michigan law by earlier Sixth Circuit panel based on intervening caselaw by *intermediate* state appellate court).

Heath has not identified any intervening Tennessee caselaw that would permit this court to disregard the Sixth Circuit's holding in *Strayhorn*.[2] The court is certainly aware of the criticisms that can be made of that holding; indeed, the court finds those criticisms quite persuasive. This court, however, is not in a position to disregard Sixth Circuit precedent on this issue unless Tennessee caselaw itself establishes that the Sixth Circuit's holding is out of date. Because that

---

[2] In fact, although Heath's briefing does not directly address *Strayhorn* at all, he concedes the lack of caselaw adopting his position—which, by extension, also means that there is no post-*Strayhorn* intervening caselaw that would permit this court to adopt Heath's position despite that case's holding.

4

has not happened, it is **ORDERED** that the jury will only be instructed as to the prudent manufacturer test for determining whether the IVC was unreasonably dangerous.

It is so **ORDERED**.


ALETA A. TRAUGER
United States District Judge